In the
United States Court of Appeals
For the Seventh Circuit

No. 98-2454

In the Matter of Herbert P. Carlson
and Margaret P. Carlson,

Debtors-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 6566--John A. Nordberg, Judge.

Submitted April 17, 2000--Decided August 15, 2000

  Before Fairchild, Posner, and Diane P. Wood, Circuit
Judges.

  Diane P. Wood, Circuit Judge.  Herbert Carlson is
a lawyer. For a period of time, he neglected to
pay any of the approximately $150,000 in income
tax that he owed for the money he earned in 1990,
1991, and 1992. Eventually, Carlson paid up, but
he contested his obligation to pay the
accompanying interest and penalties on the
overdue income taxes, as well as some
unemployment and Social Security taxes that were
assessed on the payroll of Carlson's law
practice. In the meantime, in 1994 Carlson sought
Chapter 11 bankruptcy protection. Before the
bankruptcy court, the IRS filed a proof of claim,
which Carlson unsuccessfully opposed both there
and on appeal. See Matter of Carlson, 126 F.3d
915 (7th Cir. 1997).

  The bankruptcy court later (on August 20, 1996)
dismissed Carlson's case for failure to submit a
confirmable plan. Carlson appealed to the
district court, where his case is currently
pending. In connection with that appeal, Carlson
asked the bankruptcy court for a stay of
collection proceedings pending the district
court's resolution of the case. The bankruptcy
court denied his request, as did the district
court. The case stalled at that point for quite
some time, while Carlson moved for
reconsideration, settlement discussions took
place, and the IRS received unfulfilled promises
for payment. During much of that time, a
temporary stay was in effect. Eventually,
however, on June 3, 1998, the district court
denied Carlson's motion to reconsider its earlier

(1996) order denying the stay. The judge offered Carlson the option of a stay if he posted a $700,000 bond (which the judge indicated was his estimate of the amount likely to be due by the time all was said and done), but Carlson either cannot or will not post such a bond. He and his wife have appealed to this court asking us to reverse the district court's decision.

Before addressing his arguments, we must resolve a matter of appellate jurisdiction. Since no final decision has been rendered by the district court, Carlson is invoking our jurisdiction under the collateral order doctrine of Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1946). A collateral order is sufficiently final in itself to support jurisdiction under 28 U.S.C. sec. 1291 if three criteria are met: (1) the order must conclusively determine the disputed question; (2) it must resolve an important issue completely separate from the merits of the action; and (3) it must be effectively unreviewable on appeal from a final judgment. Wingerter v. Chester Quarry Co., 185 F.3d 657, 662-63 (7th Cir. 1999). At least in the bankruptcy context, and perhaps generally, the most important of these criteria is the third. See In re Firstmark Corp., 46 F.3d 653, 659-60 (7th Cir. 1995); In re Klein, 940 F.2d 1075, 1078 (7th Cir. 1991); Matter of UNR Industries, Inc., 725 F.2d 1111, 1117 (7th Cir. 1984). See also Matter of Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997) (allowing appeal of a denied stay under 28 U.S.C. sec. 1292 because remaining creditors' interests could not be properly protected if ordered distribution occurred). This makes sense, since the point of the Cohen exception to the final judgment requirement is that where the harm of the order cannot be remedied on appeal, the order itself is effectively final and the hypothetical chance to complain after final judgment in the principal action does the losing party little good. Palmer v. City of Chicago, 806 F.2d 1316, 1318-19 (7th Cir. 1986).

Carlson maintains that because stay was denied, the IRS is free to seize and liquidate his home to satisfy its tax claim. The IRS agrees that sale of the property may be required. In general, if the IRS were to seize assets for payment of taxes, penalties, or interest, and a court later ruled that the taxpayer was not liable for some or all of the payment, the damage could be undone by a simple order requiring repayment with appropriate interest. Carlson urges us here to recognize an exception to that principle, because of the heightened interest he has in his home. He notes that homes are treated specially in a variety of different contexts. See, e.g., 11 U.S.C. sec. 522(d) (bankruptcy exemptions);

United States v. James Daniel Good Real Property, 510 U.S. 43, 54 (1993) (forfeitures); California v. Ciraolo, 476 U.S. 207, 213 (1986) (searches). He concludes that, to the extent this case is about the IRS's power to seize his home for satisfaction of his tax liabilities, it's now or never for him.

The IRS counters by saying that while Cohen applies to the denial of a security requirement (thus allowing it to appeal now if the district court had granted a stay without imposing a bond requirement), the rule does not reach a decision to require security, which was the effect of the district court's order in this case. A denial of security is ordinarily immediately appealable because the prevailing plaintiff who is denied security may find that the defendant's assets that were once available to satisfy the judgment have vanished during appellate litigation. Matter of UNR Industries, Inc., 725 F.2d at 1117. Requiring security usually does not raise that problem because if the losing side fails to post security, the prevailing party can collect immediately, recognizing that it will have to return the money should the judgment be reversed on appeal. See Cohen, 339 U.S. at 688 ("The situation is quite different where an attachment is upheld pending determination of the principal claim. . . . In such a situation the rights of all the parties can be adequately protected while the litigation on the main claim proceeds."). Here, of course, the IRS could return the proceeds of the sale of Carlson's home (less the outstanding mortgage balance). Still, money is not the same as the house, and Carlson is undoubtedly right to note that there is no guarantee that the government would keep the home itself for the duration of the appeal. Our decision thus assumes that Carlson's prediction is correct: if the IRS turns to his home for satisfaction of its claims, he and his wife will not live in that home again.

The real problem Carlson faces is that he offers absolutely no authority for the proposition that homes are somehow exempt from tax liens. This is not surprising, because it is not uncommon for the IRS to turn to precisely that asset for payment. See, e.g., American Trust v. Internal Revenue Service, 142 F.3d 920 (6th Cir. 1998); Taffi v. United States, 96 F.3d 1190 (9th Cir. 1997); United States v. Denlinger, 982 F.2d 233 (7th Cir. 1992). The Carlsons are typical in that their home represents one of their largest assets. We are not unaware of the disruption this imposes on individuals, but this is a problem Carlson brought upon himself. We therefore conclude that the substantial personal grief that the family would experience if the IRS

follows through pending this appeal and seizes the house is nonetheless not the kind of irreparable injury that the Cohen doctrine requires. That means that we have no appellate jurisdiction and we must dismiss the appeal.

If we are mistaken about the absence of a conclusive presumption that the loss of one's home is irreparable, we would agree that Cohen would support an appeal. But that would not get Carlson very far, because this particular appeal is utterly without merit. Ordinarily a party is entitled to a stay pending appeal only by posting an appropriate bond. See Fed. R. Civ. P. 62(d); Fed. R. Bankr. P. 7062. The district court has the discretion to waive this requirement, but waiver is appropriate only if the appellant has a clearly demonstrated ability to satisfy the judgment in the event the appeal is unsuccessful and there is no other concern that the appellee's rights will be compromised by a failure adequately to secure the judgment. See, e.g., Dillon v. City of Chicago, 866 F.2d 902, 904-05 (7th Cir. 1988); NIPSCO v. Carbon Coal Co., 799 F.2d 265, 281 (7th Cir. 1986). This case presents the polar opposite of a situation in which waiver is appropriate. There is every reason to lack confidence that Carlson will pay up eventually; to the contrary, just two days after a prior IRS collection effort, Carlson signaled his intent to evade his obligations by transferring a piece of real estate to his son at no charge. Carlson, 126 F.3d at 919. Nor has Carlson subsequently demonstrated anything but obstinance in this matter since our last opinion. Indeed, although this appeal was docketed in June 1998, Carlson's various motions for extension delayed its submission for nearly two years. Finally, the $700,000 amount seems reasonable in light of the estimated tax liability Carlson faces. Consequently, the district court's decision to apply the usual bond requirement was well justified.

The appeal is Dismissed for lack of jurisdiction.