**Paul J. FROMMERT, et al., Plaintiffs,**

v.

**Sally L. CONKRIGHT, Patricia M. Nazemetz and Lawrence M. Becker, Xerox Corporation Retirement Income Guarantee Plan Administrators and Xerox Corporation Retirement Income Guarantee Plan, Defendants.**

No. 00–CV–6311L.

United States District Court,
W.D. New York.

Aug. 5, 2009.

George A. Schell, Jr., Schell & Schell, Fairport, NY, Robert H. Jaffe, Robert H. Jaffe & Associates, P.A., Springfield, NJ, Peter Stris, Stris & Maher, LLP, Dallas, TX, for Plaintiffs.

Margaret A. Clemens, Nixon Peabody LLP, Rochester, NY, for Defendants.

*DECISION AND ORDER*

DAVID G. LARIMER, District Judge.

On January 6, 2006, the United States Court of Appeals for the Second Circuit held that the defendants in this case, the Xerox Corporation Retirement Income Guarantee Plan and its administrators (hereinafter "defendants" or "the Plan"), violated plaintiffs' rights under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Court of Appeals held that the Plan impermissibly calculated plaintiffs' benefits by using a so-called "phantom account." 433 F.3d 254. Familiarity with the Second Circuit's decision on this point is assumed.

The Second Circuit remanded the case to this Court to fashion an appropriate remedy for the violation. Specifically, the Court of Appeals instructed this Court as follows:

> On remand, the remedy crafted by the district court for those employees rehired prior to 1998 should utilize an appropriate pre-amendment calculation to determine their benefits. We recognize the difficulty that this task poses because of the ambiguous manner in which the pre-amendment terms of the Plan described how prior distributions were to be treated. As guidance for the district court, we suggest that it may wish to employ equitable principles when determining the appropriate calculation and fashioning the appropriate remedy.

*Id.* at 268.

This Court then received submissions from both sides, conducted an evidentiary hearing and, thereafter, issued a decision and remedy describing the manner by which payments were to be calculated for the affected employees. That decision ("remedy decision") was entered on January 24, 2007. 472 F.Supp.2d 452.

On March 6, 2007, this Court granted defendants' motion for a stay pending appeal to the Court of Appeals pursuant to Rule 62(d) of the Federal Rules of Civil Procedure, and waived the Rule 62(d) bond requirement. In doing so, I stated that defendants had shown that the Plan "has ample assets and is fully capable of paying any judgment entered in this case," and I therefore concluded that "the posting of a bond here serves no legitimate purpose and would be an unnecessary expense." 472 F.Supp.2d at 468–69.

By decision entered July 24, 2008, the United States Court of Appeals for the Second Circuit unanimously affirmed this Court's remedy decision concerning the identified ERISA violations. 535 F.3d 111.[1] The Plan's request for a rehearing or for *en banc* consideration was denied by the Second Circuit on September 25, 2008.

Thereafter, defendants petitioned the United States Supreme Court to grant certiorari. While that petition was pending, defendants applied to the Supreme Court for a stay of the Second Circuit's mandate. Acting in her capacity as Circuit Justice, Justice Ginsburg denied that application on April 30, 2009.[2] *Conkright v. Frommert,* — U.S. ——, 129 S.Ct. 1861, 173 L.Ed.2d 865 (2009). On June 29, 2009, the Supreme Court granted the Plan's petition for certiorari as to the two issues raised in

---

1. The Court of Appeals also vacated that portion of this Court's order holding that the release forms signed by several plaintiffs were unenforceable. 535 F.3d at 122.

2. As Justice Ginsburg explained in her April 30 order, that was the second time that she denied a stay application in this case. On October 16, 2008, defendants sought a stay pending the filing and disposition of their petition for certiorari. Justice Ginsburg denied that application on October 20, 2008. *See* 129 S.Ct. at 1861.

the petition. *Conkright v. Frommert,* —— U.S. ——, 129 S.Ct. 2860, 174 L.Ed.2d 575 (2009).

The Plan now moves in this Court either for a modification of the existing payment schedule that flowed from this Court's remedy decision or for a stay pending final disposition by the United States Supreme Court. Plaintiffs oppose the motion. Both sides have submitted papers and memoranda of law, and the Court heard oral argument on the motion on July 24, 2009.

Having reviewed both sides' submissions and considered their respective arguments, the Court grants defendants' motion for a stay. In short, I see no reason to reach a different decision on the present application for a stay than I did in my prior order granting a stay pending appeal to the Court of Appeals.

■ The Plan has moved for a stay pursuant to Fed.R.Civ.P. 62(d). That rule provides for an automatic stay pending appeal upon the posting of a supersedeas bond by the appellant. Although the rule provides that the stay takes effect upon the district court's approval of the bond, the party posting the bond is entitled to a stay as of right; the court has no discretion to deny the stay itself, but only to fix the amount of (or to waive) the bond. *See American Mfrs. Mut. Ins. Co. v. American Broadcasting–Paramount Theatres, Inc.,* 87 S.Ct. 1, 3, 17 L.Ed.2d 37 (1966) ("With respect to a case arising in the federal system it seems to be accepted that a party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed.R.Civ.P. 62(d)") (Harlan, J., in chambers); *Cohen v. Metropolitan Life Ins. Co.,* No. 07–2071–cv, 2009 WL 1605139, at *3 (2d Cir. June 9, 2009) ("Rule 62(d) provides that an appellant may obtain a stay pending appeal, as of right, by posting a supersedeas bond") (unreported decision); *Eurasia Intern., Ltd. v. Holman Shipping, Inc.,* 411 F.3d 578, 585 (5th Cir.2005) ("Fed.R.Civ.P. 62(d) provides that a party is entitled to an automatic stay of proceedings to enforce a judgment upon appeal when it posts a supersedeas bond").

Rule 62(d) does not apply in all cases, however. In general, Rule 62(d) is applied only to money judgments. *See Hebert v. Exxon Corp.,* 953 F.2d 936, 938 (5th Cir. 1992) ("Courts have restricted the application of Rule 62(d)'s automatic stay to judgments for money because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment"); *N.L.R.B. v. Westphal,* 859 F.2d 818, 819 (9th Cir. 1988) (automatic stay of Rule 62(d) applies only to monetary awards); *Donovan v. Fall River Foundry Co., Inc.,* 696 F.2d 524, 526 (7th Cir.1982) (stating that Rule 62(d) procedure "makes little sense as applied to an order to do, rather than an order to pay"); *Centauri Shipping Ltd. v. Western Bulk Carriers KS,* 528 F.Supp.2d 186, 188 (S.D.N.Y.2007) ("it is well-settled that subsection (d) applies exclusively to stays of money judgments"). The rationale behind that rule is that "where a party has been ordered to do or perform an act, the monetary value of a delay in performance is not so readily ascertained" as with an order to pay a sum of money. *Miller v. LeSea Broadcasting, Inc.,* 927 F.Supp. 1148, 1151 (E.D.Wis.1996) (applying Rule 62(c) to motion for stay of order requiring specific performance of agreement to sell television station).

Non-money judgments, on the other hand, are governed by Rule 62(c), which provides for discretionary stays pending appeal. *See Law v. National Collegiate Athletic Ass'n,* 134 F.3d 1025, 1030 (10th Cir.1998); *Centauri Shipping,* 528

F.Supp.2d at 189. Courts deciding whether to grant a stay under Rule 62(c) generally apply a four-part test, taking into consideration (1) the strength of the applicant's showing that it is likely to succeed on the merits of the appeal, (2) the danger that the applicant will be irreparably injured absent a stay, (3) whether the issuance of a stay will substantially injure other interested parties, and (4) where the public interest, if any, lies. *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).[3] *But see Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.,* 210 F.3d 1309, 1313 (11th Cir.2000) (affirming stay of execution of judgment vacating writ of attachment, which court referred to as a "non-money judgment," under Rule 62(d), but applying the four-part test of Rule 62(c)).

In determining whether Rule 62(d) applies, the court should focus on the nature of the relief ordered, not simply on the form of the judgment. *See Hebert,* 953 F.2d at 938 (stating that "[t]he applicability of Rule 62(d) turns not on that distinction [between declaratory and money judgments], but on whether the judgment involved is monetary or nonmonetary," and concluding that since the district court's declaratory judgment bound party

to pay a "specific sum" of money, Rule 62(d) applied); *Bolt v. Merrimack Pharmaceuticals, Inc.,* No. S–04–0893, 2005 WL 2298423, at *2 (E.D.Cal.2005) (applying Rule 62(d) where "the declaratory judgment in this case, which laid the foundation for plaintiff's right to redeem his stock, is more akin to a money judgement rather than injunctive relief").

In the case at bar, this Court's remedy decision directed defendants to "recalculate plaintiffs' retirement benefits, consistent with the terms of this Decision and Order and the January 6, 2006 decision of the Court of Appeals for the Second Circuit, and *to pay each plaintiff a lump sum* in the amount of the difference between the amount of benefits that each plaintiff has received, and the amount of the recalculated benefit, without any consideration of a 'phantom account.'" 472 F.Supp.2d at 467 (emphasis added). That was clearly, then, an order "to pay" rather than an order "to do." *Donovan,* 696 F.2d at 526. That the order itself did not set forth a specified amount is of no moment; the relief ordered was indisputably monetary in nature: defendants were ordered to pay the plaintiffs money. *See also Beatrice Foods Co. v. New England Printing and Lithographing Co.,* 930 F.2d 1572, 1574–76 (Fed.Cir.1991) (surety remained liable on

---

**3.** As one court has observed, "[l]ogic dictates that a court will seldom [issue an order or judgment and] then turn around and grant [a stay] pending appeal, finding, in part, that the party seeking [the stay] is likely to prevail on appeal, *i.e.* that it is likely that the court erred in [issuing the underlying order or judgment]." *Dayton Christian Schools v. Ohio Civil Rights Comm'n,* 604 F.Supp. 101, 103 (D.C.Ohio.1984). As the court in *Dayton Christian Schools* went on to explain, however, the stay applicant need not demonstrate that it is more likely than not that it will prevail on appeal; rather, "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors." *Id. See also Mohammed v.*

*Reno,* 309 F.3d 95, 101 (2d Cir.2002) ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other") (quotation marks and alteration omitted); *Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir.1983) (court employs "sliding scale" under Rule 62(c), at one end of which "the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury," and at the other end of which "the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor").

Rule 62(d) supersedeas bond throughout prior proceedings on appeal and on remand to district court, since the question on remand [wa]s not whether damages were due, but merely how the damages should be calculated); *cf. Cohen v. Metropolitan Life Ins. Co.,* No. 00 Civ. 6112, 2008 WL 1826484, at *1 (S.D.N.Y. Apr. 22, 2008) (order remanding matter to insurer for a determination as to whether plaintiff was disabled within meaning of long-term disability plan was not a money judgment, and therefore insurer's stay application was governed by discretionary stay provisions of Rule 62(c)), *rev'd on other grounds in part,* 2009 WL 1605139 (2d Cir. June 9, 2009).[4]

The fundamental question in this regard, then, is not whether the underlying judgment itself put a dollar figure on the relief ordered, but on whether the monetary value of the judgment "can be calculated and secured with relative ease." *J. Perez & CIA, Inc. v. United States,* 747 F.2d 813, 816 (1st Cir.1984) (Breyer, J., in chambers); *see also Miller v. LeSea Broadcasting, Inc.,* 927 F.Supp. 1148, 1151 (E.D.Wis. 1996) ("The right to obtain an automatic stay under Rule 62(d) is presumably premised on the fact that money judgments, and therefore the amount of the required bond, are easily calculated"); *cf. In re Tower Automotive, Inc.,* No. 06–CV–2105 (RWS), 2007 WL 1975447, at *1 (S.D.N.Y. July 6, 2007) (since court's judgment was a declaratory judgment that determined the scope of insurer's obligation, and that "awarded no fixed sum of money," and because "the parties agree[d] that the amount due under the insurance policy [was at that time] unknown[,] Rule 62(d)

[wa]is inapplicable"); *Omnioffices, Inc. v. Kaidanow,* 201 F.Supp.2d 41, 43 (D.D.C. 2002) ("when a judgment involves costs that cannot be calculated, it is inequitable to grant a stay and thus to deny the non-moving party assurance that it will not suffer additional harm"). There is no reason to think that the monetary value of the relief ordered here could not be calculated easily, and for that matter, it appears likely that most of the calculations have been performed, since what is principally at issue here are payments to a particular group of plaintiffs who have elected to take, but have not yet received, a lump-sum distribution. Defendants contend, and plaintiffs do not appear to dispute, that pursuant to this Court's prior order, payments to those plaintiffs total about seven million dollars. *See* Jeff Clymer Aff. (Dkt. # 191–4) ¶¶ 5, 6.

In that regard, I note that there are two other sets of plaintiffs in this lawsuit: plaintiffs who were terminated from Xerox who have already received their full distributions, and those who are still working at Xerox. Payments to the former have already been made, then, and are not at issue with respect to the stay order. Payments to the latter group have not yet come due, and would obviously be difficult to calculate now, since the amount of a recipient's benefit presumably depends to some degree on the date that the employee leaves Xerox's employ.

There appears to be no bright-line rule as to whether an order of prospective payments should be considered "monetary" or "nonmonetary" relief. *Compare Pharmacia Corp. v. Motor Carrier Servs. Corp.,*

---

**4.** On appeal in *Cohen,* the Second Circuit held that by moving to post a supersedeas bond pursuant to Rule 62(d) rather than paying the plaintiff benefits pending appeal, the insurer had attempted to comply with the district court's order, and that the district court therefore should not have found the insurer in contempt of its prior order. The Court of Appeals found it unnecessary to decide whether the district court should have granted the Rule 62(d) motion. *Id.* at *3 n. 2.

No. 04–3724, 2008 WL 852255, at *3 (D.N.J. Mar. 28, 2008) (judgment ordering defendants to indemnify plaintiffs for past and future costs relating to remediation at particular environmental sites was part of a monetary award subject to stay under Rule 62(d), not 62(c)), *with Robbins v. Pepsi–Cola Metropolitan Bottling Co.*, 637 F.Supp. 1014, 1019 n. 15 (N.D.Ill.1986) (stating in dicta that Rule 62(c) would generally apply to order requiring future monthly payments to be made as they became due), *aff'd*, 800 F.2d 641 (7th Cir. 1986).

Under some circumstances, that distinction can matter, because if a judgment includes both a monetary award and non-monetary relief (such as an injunction), a supersedeas bond generally stays only the money award, and not the nonmonetary portion of the judgment. *Robbins*, 637 F.Supp. at 1019 n. 15; *accord Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, No. CIV. A. 96–4023, 1998 WL 43140, at *1 (E.D.La. Feb. 3, 1998); *F.T.C. v. Publishing Clearing House, Inc.*, No. CV–S–94–623, 1995 WL 792074, at *1 (July 13, 1995). *See also Halliburton Energy Services, Inc. v. NL Indus.*, No. 05–4160, 2008 WL 2787247, at *4–*6 (S.D.Tex. July 16, 2008) (concluding that portion of judgment requiring corporation to defend, indemnify, and hold harmless certain parties for future remediation costs was properly analyzed under Rule 62(d), but also concluding that other aspects of judgment, such as order requiring corporation to recognize other party's ownership of site, were nonmonetary, and denying stay as to those aspects under Rule 62(c)).

■ In the case at bar, I believe that any aspect of the judgment relating to defendants' obligation to make future payments is more accurately viewed as monetary. Although it may not be possible to calculate the precise amount of those payments now, there is also nothing to stay as to those payments at this point. Not until a plaintiff leaves Xerox's employ, or selects a retirement date, would the obligation to pay benefits arise, but the amount of that employee's benefit would also become fixed and calculable. There would be no reason at that point to treat that employee any differently from other employees whose relief was previously stayed pursuant to Rule 62(d). Whether, under this Court's remedy decision, the relief has yet come due or will come due at some later date, the significant fact is that the relief is monetary in nature. *See City of New Orleans v. Municipal Administrative Services, Inc.*, No. Civ. A. 02–0130, 2004 WL 2496202, at *4 (E.D.La. Nov. 5, 2004) ("Whether the judgment [which directed city to pay to corporation the corporation's contractual contingency fee upon the city's receipt of future payments from certain third party] is viewed as a judgment for money damages, a declaratory judgment, or judgment for specific performance of a contractual obligation, the judgment nevertheless is a judgment for the payment of money") (applying Louisiana law).

Before turning to the issue of a bond, I note that plaintiffs (whose response to defendants' stay motion does not even mention Rule 62, *see* Dkt. # 194) rely in part on Justice Ginsburg's decision denying defendants' motion for a stay before the Supreme Court in this case.[5] Their memorandum of law also repeats much of what was contained in their brief before Justice Ginsburg in opposition to that motion. *See* Clemens Aff. (Dkt. # 191–2) Ex. F.

---

**5.** When defendants moved for a stay in this Court pending appeal to the Second Circuit, plaintiffs did address Rule 62, and argued that Rule 62(c) rather than 62(d) applied. *See* Dkt. # 142. As stated, I reject that argument.

Motions for stays before the Supreme Court, however, are not governed by Rule 62, but by Supreme Court Rule 23. Rule 23 contains no provision for a stay as of right with respect to money judgments, comparable to that of Rule 62(d).[6] Rather, the reported decisions on such single-Justice stay applications indicate that the standard under Supreme Court Rule 23 is similar to the discretionary standard applied to stay applications under Civil Procedure Rule 62(c) or Appellate Rule 8(a).[7] *See Barnes v. E–Systems, Inc.,* 501 U.S. 1301, 1302, 112 S.Ct. 1, 115 L.Ed.2d 1087 (1991) ("a [single-Justice] stay issues not of right, but pursuant to sound equitable discretion") (Scalia, J., in chambers).[8]

In addition, Supreme Court Rule 23(3) provides that "[e]xcept in the most extraordinary circumstances, an application for a stay will not be entertained unless the relief requested was first sought in the appropriate court or courts below or from a judge or judges thereof." Applying that rule, Justices of the Supreme Court have stated that "[r]elief from a single Justice is appropriate only in those extraordinary cases where the applicant is able to rebut the presumption that the decisions below-both on the merits and on the proper interim disposition of the case-are correct." *Rostker v. Goldberg,* 448 U.S. 1306, 1308, 101 S.Ct. 1, 65 L.Ed.2d 1098 (1980) (Brennan, J., in chambers) (citing *Whalen v.*

---

6. Supreme Court Rule 23 provides as follows:

   1. A stay may be granted by a Justice as permitted by law.
   2. A party to a judgment sought to be reviewed may present to a Justice an application to stay the enforcement of that judgment. See 28 U.S.C. § 2101(f).
   3. An application for a stay shall set out with particularity why the relief sought is not available from any other court or judge. Except in the most extraordinary circumstances, an application for a stay will not be entertained unless the relief requested was first sought in the appropriate court or courts below or from a judge or judges thereof. An application for a stay shall identify the judgment sought to be reviewed and have appended thereto a copy of the order and opinion, if any, and a copy of the order, if any, of the court or judge below denying the relief sought, and shall set out specific reasons why a stay is justified. The form and content of an application for a stay are governed by Rules 22 and 33.2.
   4. A judge, court, or Justice granting an application for a stay pending review by this Court may condition the stay on the filing of a supersedeas bond having an approved surety or sureties. The bond will be conditioned on the satisfaction of the judgment in full, together with any costs, interest, and damages for delay that may be awarded. If a part of the judgment sought to be reviewed has already been satisfied, or is otherwise secured, the bond may be conditioned on the satisfaction of the part of the judgment not otherwise

   secured or satisfied, together with costs, interest, and damages.

7. Rule 8(a) of the Federal Rules of Appellate Procedure provides that "[a] party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal," and that "[t]he motion must . . . show that moving first in the district court would be impracticable[,] or . . . state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action." The Supreme Court has stated that "[u]nder both Rules [62(c) and 8(a)] the factors regulating the issuance of a stay are generally the same." *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

8. Justice Scalia was expressly referring to stays under 28 U.S.C. § 2101(f), which provides in part that "[i]n any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court." In granting a stay pending the filing and disposition of a petition for certiorari, Justice Scalia applied the same factors that Justices have applied in considering stay applications under Supreme Court Rule 23, however.

*Roe,* 423 U.S. 1313, 1316–1317, 96 S.Ct. 164, 46 L.Ed.2d 18 (1975) (Marshall, J., in chambers)).

Indeed, Justice Ginsburg herself stated in this case that "[d]enial of such in-chambers stay applications is the norm; relief is granted only in 'extraordinary cases.'" 129 S.Ct. at 1861 (quoting *Rostker,* 448 U.S. at 1308, 101 S.Ct. 1). *See also Ruckelshaus v. Monsanto Co.,* 463 U.S. 1315, 1316, 104 S.Ct. 3, 77 L.Ed.2d 1417 (1983) ("A Justice of this Court will grant a stay pending appeal only under extraordinary circumstances") (Blackmun, J., in chambers). That is clearly a much different standard, then, from the automatic stay provision contained in Rule 62(d). *See Becker v. United States,* 451 U.S. 1306, 1308, 101 S.Ct. 3161, 68 L.Ed.2d 828 (1981) (referring to "the automatic stay provisions of Rule 62(d) or the discretionary stay provisions of Rule 62(c)") (Rehnquist, J., in chambers).

That leaves the matter of a bond. The case law is uniform in holding that the district court may, in the appropriate circumstances, waive the requirement that the judgment debtor post a bond to obtain a stay under Rule 62(d). *See In re Carlson,* 224 F.3d 716, 719 (7th Cir.2000); *Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n,* 636 F.2d 755, 757–58 (D.C.Cir.1980); *E.E.O.C. v. Everdry Marketing and Mgmt., Inc.,* No. 01–CV–6329, 2008 WL 4514890, at * 1 (W.D.N.Y. Oct. 2, 2008); *Marcoux v. Farm Service and Supplies, Inc.,* 290 F.Supp.2d 457, 485 (S.D.N.Y.2003); *Cayuga Indian Nation of New York v. Pataki,* 188 F.Supp.2d 223, 254–55 (N.D.N.Y.2002);

*Ortiz v. New York City Housing Auth.,* 22 F.Supp.2d 15, 40 (E.D.N.Y.1998).

"The purpose of requiring a supersedeas bond pending appeal is to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency." *Olcott v. Delaware Flood Co.,* 76 F.3d 1538, 1559 (10th Cir. 1996) (internal quotation marks omitted). Therefore, if the district court is confident that the judgment debtor will continue to have sufficient funds to satisfy the judgment, the court may dispense with the bond requirement. *See Dillon v. City of Chicago,* 866 F.2d 902, 904–05 (7th Cir. 1988) (court may consider "whether 'the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money'") (quoting *Olympia Equipment v. Western Union Telegraph Co.,* 786 F.2d 794, 796 (7th Cir.1986)). *Accord Arban v. West Pub. Corp.,* 345 F.3d 390, 409 (6th Cir.2003); *Acevedo–Garcia v. Vera–Monroig,* 296 F.3d 13, 17 (1st Cir. 2002); *Cayuga Indian Nation,* 188 F.Supp.2d at 254–55.

As I stated in my March 6, 2007 order granting defendants' motion for a stay pending appeal to the Court of Appeals, defendants have shown that the Plan "has ample assets and is fully capable of paying any judgment entered in this case." 472 F.Supp.2d at 468–69. Defendants have submitted evidence that the Plan's trust fund contains over three billion in assets, far exceeding the amounts at issue in this case, which appear to run into the tens of millions at most.[9] In fact, plaintiffs do not raise any arguments about the appropriate size of the bond; they argue only that the motion for a stay

---

9. Plan Administrator Lawrence Becker stated in an affidavit filed on March 1, 2007 that as of December 31, 2006, the trust fund contained about 3.75 billion dollars in assets. Dkt. # 143–5 ¶ 4. Although no more recent figures appear to have been presented to the Court in connection with the present motion, there is no reason to think that the fund's assets today do not remain far in excess of the amount of the claims at issue here.

should be denied outright. *See* Dkt. # 194. As explained above, I am not persuaded by that argument, and, since requiring a bond under the circumstances of this case would be nothing more than a "waste of money," *Dillon*, 866 F.2d at 905, I will not require the posting of a bond here.

## CONCLUSION

Defendants' motion for an expedited hearing and for a modification of the existing payment schedule or in the alternative for a stay pending review by the Supreme Court (Dkt. # 191, # 192) is granted in part and denied in part. Defendants' motion for a stay is granted. Any obligation on the part of defendants to make payments pursuant to this Court's January 24, 2007 Decision and Order (Dkt. # 137) is hereby stayed, pending a decision on the merits of defendants' appeal to the Supreme Court of the United States, or further order of this Court. In all other respects, defendants' motion is denied as moot.

IT IS SO ORDERED.