# Supreme Court of Texas

No. 23-0767

Shana Elliott and Lawrence Kalke,

*Petitioners*,

v.

City of College Station, Texas; Karl Mooney, in his Official Capacity as Mayor of the City of College Station; and Bryan Woods, in his Official Capacity as the City Manager of the City of College Station,

*Respondents*

On Petition for Review from the
Court of Appeals for the Sixth District of Texas

JUSTICE SULLIVAN, concurring in part and dissenting in part.

In my view, the courts below erred in holding that the plaintiffs' republican-form-of-government claim is nonjusticiable under the political-question doctrine. To be frank, I struggle to improve upon the thorough, prompt, and devastating analysis that we invited a friend of the Court to file. *See* OSG Amicus Br. 9–25 (analyzing TEX. CONST. art. I, §§ 2, 29; art. II, § 1); *cf. The Simpsons: Homie the Clown* (Fox television broadcast Feb. 12, 1995) ("Stop, stop, he's already dead!"). For

now, though, we needn't reach for a ream of paper and the political-question decoder rings.[1]

That's because our Court has now "vacate[d] the lower court judgments and the court of appeals' opinion." *Ante* at 18. The opinion of the court of appeals has thus been stripped of "any binding precedential effect." *Morath v. Lewis*, 601 S.W.3d 785, 791 (Tex. 2020) (per curiam). I agree with the majority (natch) that nobody in Texas should be bound by the opinion reported at 674 S.W.3d 653. Because it'll remain reported there, bench and bar alike can still "rely[ ] on it as persuasive authority." *Morath*, 601 S.W.3d at 791. But anyone who's tempted to try will find precious little power to persuade in the opinion below—especially when stacked up against the CVSG brief that's been filed in this Court.[2]

---

[1] *See, e.g.*, *Van Dorn Preston v. M1 Support Servs., L.P.*, 642 S.W.3d 452, 455, 457–65 (Tex. 2022); *In re Abbott*, 628 S.W.3d 288, 294 n.8 (Tex. 2021); *Am. K-9 Detection Servs., LLC v. Freeman*, 556 S.W.3d 246, 249–50, 252–60 (Tex. 2018); *Morath v. Tex. Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 846–47 (Tex. 2016); WILLIAM BAUDE ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 291–324 (8th ed. 2025); PAUL M. BATOR ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 233–41 (2d ed. 1973).

[2] For the avoidance of link rot, a copy of the CVSG brief has been archived at https://perma.cc/FG5V-NBQ4. *Cf. Texas v. Am. Tobacco Co.*, 441 F. Supp. 3d 397, 424 n.21 (E.D. Tex. 2020) ("To avoid the issues of link rot and reference rot, the Court uses a persistent identifier link to archive [some website], as available at the time this Order is issued."). The brief, filed in No. 23-0767 on March 20, 2025, is also available on our website as of this writing. The acronym *CVSG*, by the way, stands for the phrase "call for the views of the solicitor general." *E.g.*, *Conkright v. Frommert*, 556 U.S. 1401, 1402–03 (2009) (Ginsburg, J., in chambers); Scott A. Keller, *Before the Bench: Unique Aspects of Texas Supreme Court Practice*, 82 TEX. BAR. J. 502, 503 & nn.29–32 (July 2019).

So why am I respectfully dissenting in part here? Unlike the majority, I wouldn't compel the plaintiffs—on pain of dismissal of their whole case—to petition the City of College Station for release from its extraterritorial jurisdiction. *See Ante* at 18 ("If after a reasonable time the plaintiffs have not submitted a compliant petition for release and have therefore elected to forgo the unilateral release process, the suit may be subject to dismissal . . . ."); *cf.* TEX. R. APP. P. 60.2(f), 60.6.

Sure, the plaintiffs could play a get-out-of-extraterritorial-jurisdiction-free card, pursuant to a bill the Governor signed into law almost two years ago. *See* S.B. 2038, 88th Leg., R.S. (2023), *codified in relevant part at* TEX. LOC. GOV'T CODE §§ 42.101–.105. And maybe that was the better play for them all along? Senate Bill 2038's relatively new opt-out regime could undercut the plaintiffs' entitlement to declaratory and injunctive relief, were a court to reach the merits of their republican-form-of-government claim. *See Ante* at 8; OSG Amicus Br. 35.

On the other hand, the City has denied every request for release from its extraterritorial jurisdiction so far, based on a dubious constitutional challenge to Senate Bill 2038 that it and other municipalities are pressing in a separate case. *See Ante* at 12. Maybe the City will win that case, or lose it slowly? Nobody knows right now— least of all these plaintiffs. If they want to keep litigating their republican-form-of-government claim in the meantime, I'd let them take their best shot on remand. *Cf. The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (Holmes, J.) ("Of course, the party who brings a suit is master to decide what law he will rely upon . . . .").

Now that this Court has spoken, though, the plaintiffs are bound to get the message: "Release is a matter of paperwork, not permission." *Ante* at 12 n.41; *cf. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 184 (2016) (Roberts, C.J., dissenting) (querying whether "there are other plaintiffs out there who . . . won't take 'yes' for an answer"). Here's hoping the City can read the handwriting on the wall, too.

James P. Sullivan
Justice

**OPINION FILED:** May 9, 2025